USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 1/16/2020

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ X
                                              :
MARQUETTE TRANSPORTATION FINANCE, :
LLC,                                               :
                                      Plaintiff,   :        18 Civ. 9879 (LGS)
                                                  :
             -against-                            :             **AMENDED**
                                                  :       **OPINION AND ORDER**
SOLEIL CHARTERED BANK. et al.,          :
                                                  :
                                           Defendants. :
------------------------------------------------------------ X

LORNA G. SCHOFIELD, District Judge:

       Plaintiff Marquette Transportation Finance, LLC ("Marquette") moves for summary judgment regarding its first claim for relief against Defendant Soleil Chartered Bank ("SCB") for its wrongful refusal to honor a letter of credit.  Defendants Soleil Capitale Corporation ("Soleil Capitale"), Soleil Capitale Group ("Soliel Group") and Govind Srivastava (together, the "Moving Defendants") move to dismiss the Amended Complaint ("Complaint"), which alleges that they are alter egos of SCB and therefore jointly liable with it.  For the reasons below, Plaintiff's motion for summary judgment is granted, and Moving Defendants' motion to dismiss is denied as to Srivastava and otherwise granted.

## I. BACKGROUND

### A. Facts Relevant to the Motion for Summary Judgment

       The facts below are taken from the parties' submissions on the motion for summary judgment and are undisputed unless otherwise noted.  Marquette provides operational financing to Sam Kane Beef Processors ("Sam Kane").  On March 15, 2018, Sam Kane obtained a Standby Letter of Credit from SCB to secure its obligations to Marquette.  The letter of credit states in pertinent part:

> We, Soleil Chartered Bank . . . undertake to pay against this Standby Letter of Credit . . . in favor of Marquette Commercial Finance . . . the sum of USD 7,000,000.00 (USD seven million only) upon presentation and surrender of this Standby Letter of Credit at the counters of Soleil Chartered Bank and the claim must be sent via bonded courier service. . . . The claim must include a copy of the default notice from Marquette Commercial Finance to Sam Kane Beef Processors, LLC. The notice shall be subject to verification by Soleil Chartered Bank.

The letter of credit by its terms is subject to the Uniform Customs and Practice for Documentary Credits (2007 Revision), International Chamber of Commerce Publication No. 600 (the "UCP").[1]

By letter dated September 4, 2018, Marquette submitted a draw request on the letter of credit by presenting Marquette's claim and tendering the original letter of credit as well as a copy of the default notice at the counters of SCB via bonded courier service. Srivastava, writing on SCB letterhead, rejected Marquette's claim because it "was never subjected to verification by Soleil Chartered Bank nor was Soleil Chartered Bank even informed of the notification," citing the language in the letter of credit that "the notice shall be subject to verification by Soleil Chartered Bank." Marquette disputed that the letter of credit required notice to SCB of the event of default before Marquette drew on the letter of credit.

---

[1] "'Generally, letters of credit are designed to substitute for, and therefore support, an obligation to pay.'" *ACR Systems, Inc. v. Woori Bank*, 232 F. Supp. 3d 471, 474 (S.D.N.Y. 2017) (quoting *All Serv. Exportacao, Importacao Comericio, S.A. v. Banco Bamerindus Do Brazil, S.A., N.Y. Branch*, 921 F.3d 32, 34 (2d Cir. 1990)). A transaction covered by a letter of credit typically involves three distinct agreements. First, there is the underlying contract between, as in this case, a borrower and lender. Second, there is the borrower's agreement with a bank to issue the letter of credit to the seller, as beneficiary, to secure the loan. Third, the letter of credit itself is an agreement, which obligates the bank to pay the lender when it presents certain documents to the bank -- in this case, the letter of credit itself and a copy of the default notice. *See Alaska Textile Co. v. Chase Manhattan Bank, N.A.*, 982 F.3d 813, 815 (2d Cir. 1992).

B.     **Facts Relevant to the Motion to Dismiss**

The facts alleged in the Complaint pertaining to the issuance and non-payment of the letter of credit are substantively the same as those stated above. The additional facts below are taken from the allegations in the Complaint, *see TCA Television Corp. v. McCollum*, 839 F.3d 168, 177 (2d Cir. 2016), and assumed to be true only for purposes of the motion to dismiss. *See Hu v. City of New York*, 927 F.3d 81, 88 (2d Cir. 2019). Moving Defendants seek to be dismissed from this litigation, challenging the allegation that they are alter egos of SCB jointly liable for SCB's wrongful conduct.

SCB is the banking and trade finance arm of Soleil Capitale, and both are subsidiaries of Soleil Group. The three companies share the same senior executives. Govind Srivastava is the Chairman and CEO of Soleil Group, CEO of Soleil Capitale and principle executive officer and Managing Director of SCB. The Complaint alleges that he uses Soleil Group, SCB and Soleil Capitale to benefit himself and his family at the expense of third parties. Srivastava's son Adhar Srivastava is Soleil Group's President and SCB's Director of Trade Finance. Dhwani Srivastava is Soleil Group's Vice President. Balwinder Kaur is Soleil Group's COO, who also does work for Soleil Capitale. Li Zhong is Soleil Group's Financial Controller and accountant, who also does work for all three companies.

The three companies also share team members. Syed Ali Abbas, Darren Grose and Elizabeth Abercrombie all do trade finance work for Soleil Group and SCB and also have email addresses associated with SCB. The three companies share the same office in New York and the same telephone and fax numbers.

## II. THE MOTION FOR SUMMARY JUDGMENT

### A. Standard

Summary Judgment is appropriate where the record establishes "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute as to a material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *accord Nick's Garage, Inc. v. Progressive Cas. Ins. Co.*, 875 F.3d 107, 113 (2d Cir. 2017). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Liberty Lobby*, 477 U.S. at 248; *accord Saleem v. Corp. Transp. Grp.*, 854 F.3d 131, 148 (2d Cir. 2017).

The court must construe the evidence in the light most favorable to the nonmoving party and must draw all reasonable inferences in favor of the nonmoving party. *Liberty Lobby*, 477 U.S. at 255; *accord Soto v. Gaudett*, 862 F.3d 148, 157 (2d Cir. 2017). When the movant has properly supported its motion with evidentiary materials, the opposing party may only establish a genuine issue of fact by "citing to particular parts of materials in the record." Fed. R. Civ. P. 56(c)(1)(A). "[A] party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010) (alteration in original); *accord Rodriguez v. City of New York*, 291 F. Supp. 3d 396, 408 (S.D.N.Y. 2018).

### B. Discussion

"A letter of credit is simply 'a contract between the bank and the beneficiary of the letter.'" *Aioi Nissay Dowa Ins. Co. Ltd. v. ProSight Specialty Management Co., Inc.*, 11 Civ.

No. 1330, 2013 WL 3111349, at *4 n.7 (S.D.N.Y. June 20, 2013) (quoting *Marino Indus. Corp. v. Chase Manhattan Bank, N.A.*, 686 F.2d 112, 115 (2d Cir. 1982)). In addition to the UCP, the parties agree that New York law governs this dispute. *See Trikona Advisers Ltd. v. Chugh*, 846 F.3d 22, 31 (2d Cir. 2017) (where the "parties' briefs assume that [a given] state law governs . . . such implied consent is sufficient to establish the applicable choice of law.") (alteration omitted).

"To prevail on a claim for wrongful dishonor of a letter of credit, a plaintiff must demonstrate: (1) that there exists a letter of credit issued by the defendant for the benefit of the plaintiff; (2) that the plaintiff timely presented conforming documents to the defendant as required by the letter of credit; and (3) that the defendant failed to pay the plaintiff on the letter of credit." *ACR Systems, Inc. v. Woori Bank*, 232 F. Supp. 3d 471, 478 (S.D.N.Y. 2017) (citing the UCP Art. 7(a)[2]). The parties dispute only the second element -- whether Plaintiff timely presented to SCB conforming documents as required by the letter of credit.

"Under New York law, in order to recover on its claim that the issuer wrongfully refused to honor its request to draw down on a letter of credit, the beneficiary must prove that it strictly complied with the terms of the letter of credit." *BasicNet S.p.A. v. CFP Services Ltd.*, 127 A.D.3d 157, 165 (1st Dep't 2015) (citing *United Commodities-Greece v. Fidelity Int'l Bank*, 64 N.Y. 2d 449 (1985)). "The corollary to the rule of strict compliance is that the requirements in letters of credit must be explicit, and that all ambiguities are construed against the issuer." *Id.* at 165-66 (alteration omitted) (quoting *Marino Indus. Corp. v. Chase Manhattan Bank, N.A.*, 686 F.2d 112, 115 (2d Cir. 1982)).

---

[2] UCP Article 7(a)(i) states: "Provided that the stipulated documents are presented to the nominated bank or to the issuing bank and that they constitute a complying presentation, the issuing bank must honour if the credit is available by . . . sight payment, deferred payment or acceptance with the issuing bank . . . ."

5

Under New York law, whether a contract is ambiguous is a question of law for the court. *See Lend Lease (US) Const. LMB Inc. v. Zurich Am. Ins. Co.*, 28 N.Y.3d 675, 681-82, 71 N.E.3d 556 (2017). If a contract term is reasonably susceptible to more than one meaning, it is ambiguous. *Glob. Reins. Corp. of Am. v. Century Indem. Co.*, 30 N.Y.3d 508, 519, 91 N.E.3d 1186 (2017). A term is unambiguous only if it has a single meaning "when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business." *Orchard Hill Master Fund Ltd. v. SBA Commc'n. Corp.*, 830 F.3d 152, 156-57 (2d Cir. 2016) (internal quotation marks omitted).

Because the undisputed facts establish that Marquette strictly complied with the unambiguous terms of the letter of credit, summary judgment is granted on Marquette's claim for wrongful dishonor. The parties do not dispute that the letter of credit requires (1) Marquette to make a draw request at the counters of SCB, (2) via bonded courier service and (3) that the claim include a copy of the default notice from Marquette to Sam Kane. The parties also do not dispute that Marquette complied with these requirements.

Instead, SCB contends that "a complying presentation [of the letter of credit] require[s] that the notice shall be subject to verification by [SCB]" and that the notice "was never subjected to verification by [SCB] nor was [SCB] even informed of the notification." Based on a plain reading of the letter of credit, SCB is incorrect. The letter of credit does not state that Marquette must inform SCB of Sam Kane's default before making its draw request, nor that SCB must verify that the notice of default is legitimate before Marquette makes the draw request. The letter of credit instead states that "[t]he claim must include a copy of the default notice from Marquette Commercial Finance to Sam Kane Beef Processors, LLC. The notice shall be subject

to verification by Soleil Chartered Bank." This language unambiguously provides that any verification is to be undertaken by SCB and not Marquette, and that SCB may verify whether Sam Kane's default notice was valid after receipt of the draw request. *Id.* SCB has not introduced evidence of any custom and practice that compels a contrary interpretation. This construction of the letter of credit correctly refrains from imposing on Marquette an additional, unwritten obligation to provide verification of Sam Kane's default. *See BasicNet S.p.A.*, 127 A.D.3d at 165-66 ("The corollary to the rule of strict compliance is that the requirements in letters of credit must be explicit"). As a matter of law, the contract is unambiguous. As a matter of undisputed fact, Marquette strictly complied with its requirements. SCB is therefore liable for wrongful dishonor.

SCB argues that granting summary judgment undermines the purpose of the letter of credit's verification requirement, which is to prevent frivolous and unjustified claims. However, this purpose is not upset if the letter of credit is construed to mean that SCB may verify whether the default notice is frivolous after receipt of the draw request. Once SCB receives the default notice, it can still determine whether the claim is frivolous and, if so, reject the draw request.

## III. THE MOTION TO DISMISS

### A. Standard

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). It is not enough for a plaintiff to allege facts that are

7

consistent with liability; the complaint must "nudge[]" claims "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. "To survive dismissal, the plaintiff must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'" *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). On a Rule 12(b)(6) motion, "all factual allegations in the complaint are accepted as true and all inferences are drawn in the plaintiff's favor." *Apotex Inc. v. Acorda Therapeutics, Inc.*, 823 F.3d 51, 59 (2d Cir. 2016) (quoting *Littlejohn v. City of New York*, 795 F.3d 297, 306 (2d Cir. 2015)).

In considering a motion to dismiss, courts "do not look beyond 'facts stated on the face of the complaint, . . . documents appended to the complaint or incorporated in the complaint by reference, . . . matters of which judicial notice may be taken,'" *Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016) (quoting *Concord Assocs. L.P. v. Entm't Props. Tr.*, 817 F.3d 46, 51 n.2 (2d Cir. 2016)) (ellipses in original), and other documents "integral to the complaint." *Id.*

**B.     Discussion**

This opinion applies New York law to the veil piercing issue based on the parties' agreement that New York law applies. *See Trikona Advisers Ltd*, 846 F.3d at 31. "New York law permits a plaintiff to pierce the corporate veil and sue a non-signatory for breach of contract when the non-party is an alter ego of one or more signatories." *Mirage Entm't, Inc. v. FEG Entretenimientos S.A.*, 326 F. Supp. 3d 26, 34 (S.D.N.Y. 2018) (internal quotation marks omitted).

"Generally, a plaintiff seeking to pierce the corporate veil must show that (1) the owners exercised complete domination of the corporation in respect to the transaction attacked; and (2) that such domination was used to commit a fraud or wrong against the plaintiff which resulted in

8

plaintiff's injury." *Cortlandt St. Recovery Corp. v. Bonderman*, 96 N.E.3d 191, 203 (N.Y. 2018); *see also Town-Line Car Wash, Inc. v. Don's Kleen Machine Kar Wash, Inc.*, 169 A.D.3d 1084, 1085, 95 N.Y.S.3d 227 (2d Dep't 2019) ("A plaintiff seeking to pierce the corporate veil must demonstrate that a court in equity should intervene because the owners of the corporation exercised complete domination over [the corporation] in the transaction at issue and, in doing so, abused the privilege of doing business in the corporate form, thereby perpetrating a wrong that resulted in injury to the plaintiff."); *Am. Fuel Corp. v. Utah Energy Dev. Co., Inc.*, 122 F.3d 130, 134 (2d Cir. 1997) ("New York law requires the party seeking to pierce a corporate veil to make a two-part showing: (i) that the owner exercised complete domination over the corporation with respect to the transaction at issue; and (ii) that such domination was used to commit a fraud or wrong that injured the party seeking to pierce the veil").

When determining whether an individual or entity has exercised complete domination, the court considers a number of factors, including:

> (1) disregard of corporate formalities; (2) inadequate capitalization; (3) intermingling of funds; (4) overlap in ownership, officers, directors, and personnel; (4) common office space, address and telephone numbers of corporate entities; (6) the degree of discretion shown by the allegedly dominated corporation; (7) whether the dealings between the entities are at arms length; (8) whether the corporations are treated as independent profit centers; (9) payment or guarantee of the corporation's debts by the dominating entity; and (10) intermingling of property between the entities.

*Freeman v. Complex Computing Co.*, 119 F.3d 1044, 1053 (2d Cir. 1997); *accord. Boroditskiy v. European Specialties LLC*, 314 F. Supp. 3d 487, 494 (S.D.N.Y. 2018).

The Complaint sufficiently pleads that Srivastava completely dominated SCB in respect to the transaction at issue. Srivastava is SCB's owner, principal executive officer, Managing Director and founder. He also owns the company's website and real property. He is principally responsible for SCB's overall business development and its day to day management. And he has

9

placed his son, who describes SCB as a "family owned business" in a senior executive position at the company. In regards to the transaction at issue, Srivastava personally signed the letter rejecting Marquette's draw request. These facts sufficiently allege control when construed in Plaintiff's favor. *See City of Almaty v. Ablyazov*, 278 F. Supp. 3d 776, 799-800 (S.D.N.Y. 2017) (holding, in a motion to dismiss, that allegations that defendants wholly owned and controlled an entity, used their own monies to facilitate transactions and directly participated in the transaction at issue survive dismissal); *Mohegan Lake Motors, Inc. v. Maoli*, No. 16 Civ. 6717, 2017 WL 6335905, at *9 (S.D.N.Y. Dec. 7, 2017) (holding, in a motion to dismiss, that allegations that an individual solely controlled and managed a company he founded and used the entity to facilitate personal transactions survive dismissal).

The Complaint also pleads that Srivastava used his domination of SCB to commit a wrong against Plaintiff. "[T]he wrongful or unjust act must consist of more than merely the breach of contract that is the basis of the party's lawsuit." *Mirage Entm't, Inc.*, 326 F. Supp. 3d at 34 (internal quotation marks omitted); *see also Baby Phat Holding Co., LLC v. Kellwood Co.*, 123 A.D.3d 405, 407 (1st Dep't 2014) ("While fraud certainly satisfies the wrongdoing requirement, other claims of inequity or malfeasance will also suffice"). In *Cortlandt St. Recovery Corp.*, 96 N.E.3d at 203-04, the New York Court of Appeals held that Defendants' "misuse[ of] the corporate form" by creating shell companies to commit securities violations was a cognizable wrong for veil piercing purposes.

Here, the Complaint alleges that Srivastava used SCB to benefit himself and his family at the expense of third parties such as Marquette. Construed in Plaintiff's favor at this stage in the proceeding, this allegation sufficiently pleads a "misuse[ of] the corporate form" sufficient to survive dismissal. *Id.*; *see NetJets Aviation, Inc. v. LHC Comm'ns, LLC*, 537 F.3d 168, 177 (2d

10

Cir. 2008) (stating that, after determining that the control prong is met, the inquiry asks "whether the corporation was used to engage in conduct that was inequitable or prohibited") (internal quotation marks and citations omitted); *Hamlen v. Gateway Energy Services Corp.*, No. 16 Civ. 3526, 2017 WL 6398729, at *11 (S.D.N.Y. Dec. 8, 2017) ("The law requires that fraud or injustice be found in the defendants' use of the corporate form.").

Moving Defendants refer to a declaration of Srivastava to refute the alter ego allegation. But such extrinsic evidence cannot be considered on a motion to dismiss. *Hu*, 927 F.3d at 88 ("In deciding a Rule 12(b)(6) motion, the court may consider only the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the pleadings, and matters of which judicial notice may be taken") (internal quotation marks omitted); *see also Dentsply International Inc. v. Dental Brands for Less LLC*, 15 Civ. 8775, 2016 WL 3676686, at *2 (stating that a "Defendant's reliance on fact-based arguments (as well as declarations and exhibits supporting these arguments)" to buttress a motion to dismiss a complaint "is wholly inappropriate"). Because the Complaint sufficiently pleads the elements for alter ego liability against Srivastava, the motion to dismiss this defendant from the lawsuit is denied.

In contrast, as to Soleil Capitale and Soleil Group, regardless of their relationship with or domination of SCB, the Complaint does not plead that they used any such relationship to commit a wrong against Plaintiff, or even that they participated in the transaction at issue. Consequently, these defendants are dismissed.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff's motion for summary judgment as to the first claim for relief is GRANTED as against Defendant SCB. Moving Defendants' motion to dismiss Soleil Group and Soleil Capitale is granted. Both motions are otherwise denied.

11

The Court of Clerk is respectfully directed to close Dockets 80, 85 and 94

Dated: January 16, 2020
New York, New York

_____
**LORNA G. SCHOFIELD**
**UNITED STATES DISTRICT JUDGE**